```
                IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF KANSAS


MICHAEL J. NELSON,              )
                                )
                  Plaintiff,    )    CIVIL ACTION
                                )
v.                              )    No.  03-1280-MLB
                                )
THE BOEING COMPANY,             )
                                )
                  Defendant.    )
                                )
```

## MEMORANDUM AND ORDER

**I.   INTRODUCTION**

 This case comes before the court on defendant's motion for summary judgment. (Doc. 44.)  Plaintiff was caught up in a reduction in force (RIF) at defendant's Wichita, Kansas facility.  Although more than 1200 employees were laid off in the RIF that eliminated plaintiff's entire department, plaintiff claims that he was terminated based on his race, Iranian, age and/or in retaliation for his complaints about sexual harassment.  Plaintiff also asserts that he was sexually harassed in violation of Title VII.  Plaintiff further alleges that defendant tortiously interfered with his prospective employment opportunities in violation of Kansas law.  However, the causes of action he has chosen to pursue have specific evidentiary requirements that he is required to meet in order to survive summary judgment.  Plaintiff fails to meet those requirements, and his claims are accordingly dismissed.

**II.  SUMMARY JUDGMENT STANDARDS**

 The usual and primary purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.  <u>See</u>

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "shows] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citations omitted); see also Adams v. American Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (citing Adler). The mere existence of some factual dispute will not defeat an otherwise properly supported motion for summary judgment because the factual dispute must be material. See Renfro v. City of Emporia, 948 F.2d 1529, 1533 (10th Cir. 1991). In determining whether genuine issues of material fact exist, the court "constru[es] all facts and reasonable inferences in a light most favorable to the nonmoving party." Pub. Serv. Co. of Colo. v. Cont'l Cas. Co., 26 F.3d 1508, 1513-14 (10th Cir. 1994).

Defendant initially must show both an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Adler, 144 F.3d at 670. Because plaintiff bears the burden of proof at trial, defendant need not "support [its] motion with affidavits or other similar materials negating [plaintiff's]" claims or defenses. Celotex, 477 U.S. at 323 (emphasis in original). Rather, defendant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of plaintiff's claim. See Adler, 144 F.3d at 671 (citing Celotex, 477 U.S. at 325).

If defendant properly supports its motion, the burden then shifts to plaintiff, who may not rest upon the mere allegation or denials of its pleading, but must set forth specific facts showing that there is a genuine issue for trial. See Mitchell v. City of Moore, 218 F.3d 1190, 1197-98 (10th Cir. 2000). In setting forward these specific facts, plaintiff must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." Adler, 144 F.3d at 671. If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted. See Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 533 (10th Cir. 1994). Plaintiff "cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 793 (10th Cir. 1988). Put simply, plaintiff must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Certain local rules further govern the presentation of facts and evidence. Local Rule 56.1 requires the movant to set forth a concise statement of material facts. D. Kan. Rule 56.1. Each fact must appear in a separately numbered paragraph and each paragraph must refer with particularity to the portion of the record upon which the defendant relies. See id. The opposing memorandum must contain a similar statement of facts. Plaintiff must number each fact in dispute, refer with particularity to those portions of the record upon which he relies and, if applicable, state the number of the

defendants' fact that he disputes. The court may, <u>but is not obligated to</u>, search for and consider evidence in the record that would rebut the defendant's evidence, but that plaintiff has failed to cite. See <u>Mitchell</u>, 218 F.3d at 1199; <u>Adler</u>, 144 F.3d at 672. All material facts set forth in the statement of defendant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of plaintiff. See <u>id.</u>; <u>Gullickson v. Southwest Airlines Pilots' Ass'n</u>, 87 F.3d 1176, 1183 (10th Cir. 1996) (applying local rules of District of Utah). A standing order of this court also precludes drawing inferences or making arguments within the statement of facts.

   The parties need not present evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible. See <u>Thomas v. Int'l Bus. Machs.</u>, 48 F.3d 478, 485 (10th Cir. 1995) (internal quotations and citations omitted). For example, hearsay testimony that would be inadmissible at trial may not be included. See <u>Adams</u>, 233 F.3d at 1246. Similarly, the court will disregard conclusory statements and statements not based on personal knowledge. See <u>Cole v. Ruidoso Mun. Schs.</u>, 43 F.3d 1373, 1382 (10th Cir. 1994) (regarding conclusory statements); <u>Gross v. Burggraf Constr. Co.</u>, 53 F.3d 1531, 1541 (10th Cir. 1995) (requiring personal knowledge). Finally, the court may disregard facts supported only by references to documents unless the parties have stipulated to the admissibility of the documents or the documents have been authenticated by and attached to an affidavit meeting the requirements of Rule 56(e). See Fed. R. Civ. P. 56(e); D. Kan. Rule 56.1; 10A Charles Alan Wright, et al., <u>Federal Practice and Procedure</u> § 2722 (2d

ed. 1983) (footnotes omitted).

In the end, when confronted with a fully briefed motion for summary judgment, the court must determine "whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If sufficient evidence exists on which a trier of fact could reasonably find for the plaintiff, summary judgment is inappropriate. See Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

### III. FACTS[1]

Plaintiff is an engineer who worked in Boeing Airplane Services (BAS) from approximately June 13, 1996, until he was laid off on March 22, 2002. Plaintiff has been diagnosed, by two different physicians, as suffering from a paranoid personality. Plaintiff has refused to continue treatment and believes that the diagnoses are "worthless." During his employment with defendant, plaintiff thought he was the subject of a company-wide conspiracy to "get him out the door." Plaintiff believes that defendant placed wire taps on his home and work telephones and paid individuals to spy on him. (Docs. 44 at 3-4; 45 at 1.)

Plaintiff also believes that private medical information,

---

[1] In his response, plaintiff failed to put forth any specific facts as required by D. Kan. Rule 56.1. See also Mitchell, 218 F.3d at 1197-98. In addition, plaintiff failed to controvert any of defendant's uncontroverted facts. Therefore, all facts set out in defendant's motion for summary judgment are deemed admitted by plaintiff for summary judgment purposes. Mitchael v. Intracorp, Inc., 179 F.3d 847, 856 (10th Cir. 1999).

-5-

concerning a prostate exam, was circulated to all Boeing employees. This allegation was included in a charge of discrimination with the Kansas Human Rights Commission (KHRC) that alleged disparate treatment and harassment based on plaintiff's race, religion, sex, national origin, ancestry, and disability.  KHRC issued a finding of no probable cause on February 7, 2001.  The EEOC issued plaintiff a Dismissal and Notice of Rights on May 31, 2001.  Plaintiff did not file a lawsuit within ninety days of his receipt of the notice. (Docs. 44 at 4-5; 45 at 1.)

### Sexual Harassment Claim

Plaintiff estimated that he was touched on his butt sixty-five times during his employment at Boeing.  The last incident occurred in the summer of 2001 when plaintiff backed up from a printer and a male engineer ran into him.  Plaintiff thinks this was intentional since the engineer did not apologize.  However, plaintiff could not recall many specifics of the other sixty-four times he was touched. In 1998, two incidents included co-workers who squeezed his leg during separate conversations with plaintiff.[2]  Plaintiff was also tapped on his butt and asked, "How ya doing?"  (Doc. 44 at 7.)  In 1999, a female co-worker ran the back of her hand on plaintiff's butt as she was walking behind him and said "I think he likes me; he didn't say anything." (Doc. 44 at 6.) Plaintiff also states that his co-workers rubbed

---

[2] Plaintiff does not dispute the characterization of this fact in a separate statement of facts as required by D. Kan. Rule 56.1, but instead states in the argument section that his "genitals were squeezed."  Plaintiff's citation directs the court's attention to his deposition.  (Doc. 44, exh. 1 at 258).  Contrary to the assertion in plaintiff's argument section, the deposition testimony does <u>not</u> make any reference to his genitals, but <u>only</u> that his lap was squeezed.

-6-

themselves in front of him "from their chest to their knee." (Doc. 44 at 7.) Plaintiff does not know if the male co-workers who touched him are homosexual. (Docs. 44 at 5-7; 45 at 1.)

Plaintiff reported many allegations of harassment to his managers and the human resources department. Although all incidents were investigated and found to be unsubstantiated, plaintiff believes that the complaints had merit and defendant was engaging in a "cover up." Plaintiff's personnel representative, Becky Stapp, came to the conclusion that plaintiff would overhear co-workers talking about something else, but plaintiff believed they were talking to him. As a result of this conclusion, she urged plaintiff to take advantage of the Employee Assistance Program because of the frequency and bizarre nature of plaintiff's complaints, the fact that the complaints were never substantiated, and plaintiff's disruption of the workplace on several occasions that resulted in a Corrective Action Memoranda. (Docs. 44 at 8; 45 at 1.)

### Plaintiff's Skill Codes

In October 2000, plaintiff's skill codes were reversed at his request. Plaintiff's primary skill code became DA2=664(avionics interface) and his first secondary skill code was DE5=622(power). Boeing uses the skill codes for retention ratings and salary planning groups. (Docs. 44 at 8-9; 45 at 1.)

On September 28, 2001, Boeing announced its decision to shut down all BAS operations in Wichita, effective at the end of the first quarter 2002. The decision was made to reduce costs and consolidate work. The 1,200 BAS employees would be laid-off when BAS closed unless they found another position in Boeing. A skill team was

-7-

developed to determine placements of BAS employees. None of the members of the skill team were aware that plaintiff had filed a claim with the KHRC or the EEOC. Squires told the team that plaintiff's performance was satisfactory, he had a tendency to get distracted, and his technical performance was not great, but not bad. Plaintiff was the lowest ranked employee in his skill code, based on a R-4 retention rating assigned by Squires in September 2001. Plaintiff had consistently been rated at R-4 during his employment. Plaintiff does not believe that he was treated improperly in receiving this rating. The skill team did not select plaintiff for an open position based on his performance and retention ratings. Plaintiff's age, race, and nationality were not discussed and were not factored in the decision. (Docs. 44 at 8-12; 45 at 1-2.)[3]

On or about January 18, 2002, plaintiff requested that his first secondary skill code be changed to DW1=652 (wiring). The skill team denied the request due to plaintiff's management personnel reporting that plaintiff did not have adequate experience in that skill.[4] Plaintiff was laid off on March 22, 2002, and BAS officially closed on March 31, 2002. Plaintiff filed a second charge of discrimination with the KHRC on May 16, 2002. Plaintiff alleged disparate treatment and harassment from March 2001 to March 22, 2002. Plaintiff also

---

[3] Plaintiff disputes the facts in this paragraph on the basis that they are "self serving." However, plaintiff fails to controvert these facts with any evidentiary support. Therefore, defendant's facts have not been controverted. Mitchell, 218 F.3d at 1199.

[4] Plaintiff again alleges that this is a disputed fact. However, again, plaintiff has failed to controvert the fact with evidentiary support. For the purpose of this motion, this fact is deemed admitted by plaintiff. Mitchell, 218 F.3d at 1199.

alleged retaliation based on his prior complaints. On March 7, 2003, the KHRC found no probable cause for plaintiff's charge. The EEOC adopted those findings and issued plaintiff a Notice of Right to Sue on June 12, 2003. (Docs. 44 at 12-13; 45 at 1-2.)

Plaintiff filed this action on August 4, 2003.

## IV. ANALYSIS

Plaintiff alleges that he was discriminated against in violation of Title VII, the Kansas Act Against Discrimination (KAAD), the Age Discrimination in Employment Act (ADEA), and the Kansas Age Discrimination in Employment Act (KADEA). Plaintiff also claims that defendant retaliated against him for engaging in protected opposition to discrimination in violation of Title VII.

### A. Age Discrimination

#### 1. Termination

Plaintiff asserts that defendant terminated his position because of his age. To survive summary judgment in a reduction in force context, a plaintiff must prove that "(1) [he] was within the protected age group; (2) he was doing satisfactory work; (3) he was discharged despite the adequacy of his work; and . . . [(4)] produc[e] evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." Ingels v. Thiokol Corp., 42 F.3d 616, 621 (10th Cir. 1994). The fourth element "may be established through circumstantial evidence that the plaintiff was treated less favorably than younger employees during the reduction-in-force." Id. Once the prima facie case has been established, the employer must assert some legitimate, nondiscriminatory reason for the employee's

-9-

rejection.  Id. at 622.  After the defendant meets the burden of producing a facially nondiscriminatory reason for the employment decision, the presumption of discrimination established by the prima facie showing "simply drops out of the picture."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).  The burden then shifts to the plaintiff to establish that the defendant discriminated on an illegal basis "by either showing that the proffered reason is a pretext for illegal discrimination, or by providing direct evidence of discrimination."  Ingels, 42 F.3d 622.

Plaintiff has failed to put forth evidence to establish the fourth element in the prima facie case.[5]  Although the skill team met to determine whether positions existed in other Boeing departments for BAS employees, no evidence exists to establish whether any BAS employee obtained a different position at Boeing.  Therefore, the court cannot conclude that plaintiff was treated any differently than a younger BAS employee since the record only shows that the entire BAS department was eliminated and all jobs extinguished.  Plaintiff has not met his burden to establish a prima facie case of age discrimination with respect to his termination.[6]

### 2.   Job Code Change

Plaintiff has also asserted that defendant's refusal to change

---

[5] The evidence on the record also reflects that plaintiff may not satisfy his burden on the second and third elements since he was consistently given the lowest rating based on his performance and ranked last out of the seventeen employees within his skill code. (Doc. 44 ¶¶ 32, 44.)

[6] Even if plaintiff had met his prima facie burden, plaintiff put forth no evidence to rebut defendant's legitimate nondiscriminatory reason.

-10-

his job code was an adverse employment action made as a result of his age.  To prove disparate treatment the "plaintiff must show: 1) [he] is a member of the class protected by the statute; 2) [he] suffered an adverse employment action; 3) [he] was qualified for the position at issue; and 4) [he] was treated less favorably than others not in the protected class." Sanchez v. Denver Public Schools, 164 F.3d 527, 531 (10th Cir. 1998).  Defendant asserts that the refusal to change the job code was not an adverse action taken against plaintiff because it did not "result in a significant change in his employment status." (Doc. 44 at 22.)  The court, however, does not need to address this argument as defendant has failed to controvert facts that negate the third and fourth elements.  Defendant did not change the job code because plaintiff did not have expertise in the area of wiring. Plaintiff has not disputed this fact nor presented evidence that he was in fact qualified for the job code change.  Furthermore, even though evidence exists that other employees were granted changes by the skill team, the record fails to reflect the protected class of these employees.  Therefore, plaintiff has not satisfied his burden on the fourth element.  As such, plaintiff cannot state a prima facie case of age discrimination for defendant's refusal to change his job code.

Plaintiff has failed to meet his burden to present sufficient evidence in which a jury could conclude that defendant was terminated or denied a job code change based on his age.  Defendant's motion for summary judgment on plaintiff's ADEA claims is accordingly GRANTED.

    **B.    Race Discrimination**

        **1.    Termination**

Plaintiff also asserts that defendant unlawfully terminated him based on his race. "The required elements of a prima facie case of intentional race discrimination involving an RIF are (1) plaintiff was within the protected group, (2) plaintiff was doing satisfactory work, (3) plaintiff was discharged despite the adequacy of his work, and (4) there is some evidence that the employer intended to discriminate against the plaintiff in reaching its RIF decision." Juarez v. ACS Government Solutions Group, Inc., 314 F.3d 1243, 1245 -1246 (10th Cir. 2003). "The fourth element can be satisfied by showing that the employer could have retained plaintiff but instead chose to keep someone of a different race." Id. As previously discussed, plaintiff has failed to satisfy his prima facie case since the uncontroverted facts do not establish that defendant intended to discriminate against plaintiff. Plaintiff has not identified one BAS employee who was retained after the RIF. The undisputed facts only demonstrate that the entire BAS workforce was eliminated. Plaintiff has completely failed to present a prima facie case of race discrimination.

### 2. Job Code Change

Plaintiff also alleges that the decision to refuse his request to change his skill code was made as a result of his race. Plaintiff's burden in both ADEA and Title VII cases is identical in the prima facie phase. As previously stated, plaintiff has failed to meet both the third and fourth elements. The undisputed facts show that plaintiff was not qualified for the skill code change. Moreover, plaintiff has not established employees, outside of his protected class, whose request was granted.

Plaintiff has failed to meet his burden to present sufficient

evidence in which a jury could conclude that defendant was terminated or denied a job code change based on his race. Defendant's motion for summary judgment on plaintiff's Title VII claims for race discrimination is accordingly GRANTED.

### C.   Sexual Harassment

#### 1.   Statute of Limitations

Defendant asserts that the statute of limitations bars all acts that occurred prior to the filing date of plaintiff's first charge of discrimination. Plaintiff filed his first charge on August 10, 2000. (Doc. 44, exh. 12). The EEOC issued plaintiff a Right to Sue letter on May 31, 2001. (Doc. 44, exh. 15). Plaintiff failed to timely file an action after he received his letter. Plaintiff asserts that the prior acts are not time barred since he has alleged a continuing violation of Title VII.

Normally, for an action to be timely, a plaintiff must file a charge with the EEOC within 300 days after an alleged employment practice. 42 U.S.C. § 2000e-5(e)(1). In a hostile environment claim, the continuing violation theory applies to allow previous violations committed outside of the 300 day time period to be considered timely as long as one violation occurred within the 300 day period. Croy v. Cobe Laboratories, Inc., 345 F.3d 1199, 1202 (10th Cir. 2003). However, "the continuing violation theory does not eliminate the requirement that a plaintiff file a judicial action within ninety days of receipt of notice of the right to sue." Brown v. Hartshorne Public School Dist. No. 1, 926 F.2d 959, 962 (10th Cir. 1991). As such, any acts that occurred before August 10, 2000, cannot be considered a part of plaintiff's sexual harassment claim. See McCue v. Kan. Dept. of

Human Resources, 938 F.Supp. 718, 721-722 (D. Kan. 1996)(acts that preceded plaintiff's charge with the EEOC cannot be considered in the hostile environment claim since plaintiff did not file an action within 90 days of her right to sue letter).

Since plaintiff has alleged a continuing violation, any acts committed after August 10, 2000, could be considered timely as long as one act occurred within 300 days of the filing of his second charge with EEOC. Croy, 345 F.3d at 1202. Plaintiff's second charge was filed May 16, 2002. Based on the court's calculations, one violation must have occurred on or after July 20, 2001. Plaintiff alleges that he was touched numerous times, but only identified one specific instance that may have occurred after July 20, 2001, namely the occasion when plaintiff was touched on the butt when he backed up from a copy machine at some point during the summer of 2001. Defendant urges this court to find that this act fell outside of the 300 day period. However, the court will treat this act as timely for purposes of the motion since the act could have occurred after July 20, 2001.

**2.   Hostile Work Environment**

To survive summary judgment on a hostile work environment claim, plaintiff "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Stinnett v. Safeway, Inc., 337 F.3d 1213, 1219 (10th Cir. 2003). "Whether an environment is hostile or abusive can be determined only by looking at all the circumstances including the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id.

Plaintiff's single collision with his co-worker does not rise to an abusive environment. See Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1175 (10th Cir. 1996)("Casual or isolated manifestations of discriminatory conduct, such as a few sexual comments or slurs, may not support a [sexual harassment] cause of action.")  Further, given the lack of specificity in the record regarding the nature, frequency and time period of the other alleged instances of inappropriate touching, such allegations are insufficient to defeat summary judgment.[7] Vigil v. City of Las Cruces, 1997 WL 265095, *2 (10th Cir. May 20, 1997)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("party opposing summary judgment may not rest upon the mere allegations ... of [his] pleading, but ... must set forth specific facts showing that there is a genuine issue for

---

[7] Plaintiff has been touched on the butt, by his estimation, a total of 65 times during his employment at Boeing. (Doc. 44, exh. 1 at 89-93, Plaintiff's Deposition).  The last touch occurred in the summer of 2001.  Plaintiff could not recall any other specific instances, except two occasions in 1998 when different co-workers squeezed his leg during a conversation and an instance in 1999 when another co-worker ran the back of her hand on his butt. Given such conclusory allegations and the court's determination that any acts before August 2000 are barred by the statute of limitations, the court cannot conclude that a reasonable jury would determine that plaintiff's work environment was abusive.
   Moreover, plaintiff argues in his response that the court should judge the severity in light of the fact that plaintiff is "from a different culture than we are used to." (Doc. 45 at 3.) However, in addition to a subjective requirement, the standard also requires a reasonable person to find the environment to be hostile or abusive. See Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993).  Plaintiff has failed to establish that a reasonable person would find that he has been subject to a hostile work environment.

trial")(internal quotations omitted)). Applying the totality of circumstances standard, the court finds that a reasonable jury would not conclude that plaintiff's conclusory allegations and a collision with a co-worker were severe or pervasive enough to alter the conditions of his employment or create a hostile work environment. See Hirase-Doi v. U.S. West Communications, Inc., 61 F.3d 777, 782 (10th Cir. 1995).

Defendant's motion for summary judgment on plaintiff's hostile work environment claim is GRANTED.[8]

### D.  Retaliation

For his last cause of action, plaintiff alleges that defendant retaliated against him for engaging in protected opposition to discrimination. Presenting no direct evidence of retaliation, plaintiff must proceed under the McDonnell Douglas framework. In order to establish a prima facie case of retaliation, plaintiff must show that "(1) [he] engaged in protected opposition to Title VII discrimination; (2) [he] suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." Meiners v. Univ. of Kan., 359 F.3d 1222, 1229 (10th Cir. 2004) (citation omitted). Plaintiff asserts that his protected activity was the filing of his EEOC charge on August 10, 2000, and his informal complaints to the human resources

---

[8] In plaintiff's opposition brief, he asserts that even if the harassment was "because of his national origin . . . it would have been illegal and actionable under Title VII." (Doc. 45 at 4). Plaintiff's statement is correct, however, this theory was not preserved in the pretrial order. (Doc. 41, Pretrial Order.) Since the pretrial order controls the subsequent course of action, plaintiff is precluded from asserting a hostile work environment claim based on racial harassment. D. Kan. Rule 16.2(c).

department. Both filing the EEOC charge and making informal complaints constitute protected activity. O'Neal v. Ferguson Const. Co., 237 F.3d 1248, 1255 (10th Cir. 2001).

To satisfy the second element, plaintiff argues that both his termination and the refusal to change his job code constitute adverse employment actions. Defendant asserts that the refusal to change plaintiff's job code is not an adverse employment action. However, the court does not need to address this argument as plaintiff fails to produce sufficient evidence to establish a causal connection.

"A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Id. at 1253 (internal quotations omitted). Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation. Id. A "three-month period, standing alone, is insufficient to establish causation." Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999). Plaintiff's EEOC charge was filed in August 2000, nearly two and one-half years before the events occurred. The undisputed facts reference the informal complaints made by plaintiff, however, the record is deplete with any specific date to reasonably conclude that a close temporal proximity existed. Since plaintiff has failed to establish close temporal proximity, he must offer additional evidence to establish causation. As previously stated, plaintiff cannot rely on his conclusory allegations, but must set forth specific facts. Id at 248. Plaintiff failed to set forth a statement of facts in his memorandum or controvert defendant's statement of facts. As

such, defendant's statement of facts are undisputed and they do not "justify an inference of retaliatory motive." <u>O'Neal</u>, 237 F.3d at 1255.

Plaintiff has failed to meet his burden to present sufficient evidence in which a jury could conclude that plaintiff was terminated or denied a job code change in retaliation for protected activity in opposition to sexual harassment. Defendant's motion for summary judgment is accordingly GRANTED.

### E. State Law Claims

Having disposed of all federal claims, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims. <u>See</u> <u>Smith v. City of Enid</u>, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). Those claims are thus DISMISSED with prejudice.

### V. CONCLUSION

In sum, plaintiff has failed to create a genuine issue of material fact with respect to any of his claims.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>, 810 F. Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 3 pages. No reply shall be filed.

The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could

not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).

    IT IS SO ORDERED.

    Dated this 28th day of February 2005, at Wichita, Kansas.

                                       s/ Monti Belot
                                       Monti L. Belot
                                       UNITED STATES DISTRICT JUDGE